**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Savas Makridis,

Plaintiff,

v.

Experian Information Solutions Incorporated, et al.,

Defendants.

No. CV-22-00498-PHX-DWL

**ORDER**

In this action, Savas Makridis ("Plaintiff") asserts claims against CACH LLC ("Defendant") for violations of the Fair Credit Reporting Act ("FCRA") and the Federal Debt Collection Practices Act ("FDCPA"). Now pending before the Court are the parties' cross-motions for summary judgment. (Docs. 37, 50.) For the following reasons, Defendant's motion is granted in part and denied in part and Plaintiff's motion is denied.

**BACKGROUND**

I. Facts

The facts are undisputed unless otherwise noted.

In October 2014, Plaintiff signed a promissory note with Prosper Marketplace, Inc. ("Prosper") for a personal loan of $12,000. (Doc. 52 at 1 ¶ 1; Doc. 56 ¶ 1; Doc. 52 at 7.)

On January 21, 2016, Prosper sold Plaintiff's loan to Defendant. (Doc. 52 at 1 ¶ 2; Doc. 56 ¶ 2; Doc. 52 at 12.)

On June 14, 2016, Plaintiff received a letter from an entity called "Fresh View Solutions" that provided in relevant part as follows:

> We have been authorized to settle the above referenced account for the total sum of $3980 payable pursuant to the below payment schedule. This settlement offer will become null and void if any of the below payments are not received in our office on or by the due date(s) stated below. Upon full payment of $3980 in good funds, this account will be considered settled in full for an amount less than the balance and you will be released from any further obligation to CACH, LLC on this account.
>
> $1990 is due on or before June 30, 2016.
>
> $1990 is due on or before July 31, 2016.

(Doc. 52 at 22.)

In September 2018, Defendant reported to various credit reporting agencies that Plaintiff had a delinquent balance of $5,970. (Doc. 52 at 2 ¶ 4; Doc. 56 ¶ 4 [Plaintiff admitting this fact].) During his deposition, Plaintiff confirmed that the resulting debt has appeared on his credit reports since at least 2018. (Doc. 52 at 64 ["[I]f [Defendant] did their part correctly, that would have boosted my credit a long, long time ago. And they were just dragging on—2017, '18, '19, '20, '21, '22, it was still dragging on my credit report. That didn't help me."].) Plaintiff also testified that he was forced to pay a higher interest rate on an auto loan he received in 2018 due to the outstanding debt reported by Defendant. (*Id.* at 66, 73.)

In the years that followed, Defendant continued reporting Plaintiff's debt. As relevant here, in November 2021, Equifax and Experian each issued a credit report that, among other things, indicated that Plaintiff owed $5,970 to Defendant. (Doc. 37-2 [Equifax]; Doc. 37-3 [Experian].) Both reports also indicated that Plaintiff disputed the debt. (Doc. 37-2 at 3 ["Consumer disputes this account information."]; Doc. 37-3 at 3 ["Account information disputed by consumer."].)

On December 29, 2021, Plaintiff's counsel sent letters to Experian and Equifax disputing the debt reported by Defendant. (Doc. 52 at 2 ¶ 5; Doc. 56 ¶ 5. *See also* Doc. 52 at 24-25 [letters].) According to the letters, Plaintiff's counsel attached the "settlement letter and copies of the cleared Cashier's Checks confirming" that Plaintiff "settled the account with Fresh View Solutions." (Doc. 52 at 24-25.) Several images were attached to the letter. (Doc. 52 at 39-50; Doc. 37-5 at 3-6, 9-12.)

In its statement of facts, Defendant contends that the images were of "an undeposited cashier's check, dated June 22, 2016; an unsigned USPS certified mail receipt, dated June 23, 2016; and several black-and-white, pixelated copies of bank documents." (Doc. 52 at 2 ¶ 7.) Plaintiff admits that this description is accurate. (Doc. 56 ¶ 7.)

More specifically, the first image was of the front of an undeposited $1,990 cashier's check that is dated June 22, 2016, lists Plaintiff as the payor, and lists Defendant as the payee. (Doc. 52 at 33.) The second image was of an unsigned certified mail receipt, dated June 23, 2016, that identifies Plaintiff as the sender and Fresh View Solutions as the recipient. (*Id.* at 35.)[1] Both of these images are clear and legible.

As for the final category of images—again, "black-and-white, pixelated copies of bank documents"—Defendant's corporate witness testified that the images are illegible. (*See, e.g.*, *id.* at 117-18 [explaining that she "can't state that this is a receipt or not, because it's so hard to see that. There's nothing on page 41. I cannot view page 42. Unfortunately, there's nothing I can see on 43 either. So, I can't confirm if those were supposed to be receipts or not. Page 44 is also illegible. I can't tell if that's I don't know exactly what that is."].) Additionally, some of Defendant's summary judgment arguments are premised on the illegibility of these documents. (*See, e.g.*, Doc. 50 at 10; Doc. 58 at 3.) Meanwhile, Plaintiff asserts in his summary judgment papers that "although the payment documents are difficult to read, they do show two payments of $1,900 made payable to Defendant." (Doc. 55 at 4.) However, when asked during his deposition if he could identify "the legible cashier's checks that prove payment was made," Plaintiff initially responded "I'm not

---

[1] Defendant asks the Court to take judicial notice of the fact that, when the tracking number on the unsigned certified mail receipt is "is entered into the USPS online tracking system, . . . a message appears stating that a label has been created but is not yet in the system; and further states that updates on the status of the package will be provided once the package has been delivered to USPS." (Doc. 50 at 4-5, 7.) This request is denied. Rule 201 of the Federal Rules of Evidence permits the court to take judicial notice of "a fact" that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Here, the FAQ section of the USPS Tracking website (the same website cited by Defendant) explains that tracking information is stored for a maximum of two years depending on the mail class. https://faq.usps.com/s/article/USPS-Tracking-The-Basics [https://perma.cc/6PLA-M9BX]. Accordingly, the accuracy of Defendant's proffered screenshot (Doc. 52 at 52) can reasonably be questioned, rendering judicial notice inappropriate.

going to answer that" and then said "I don't know." (Doc. 52 at 71-72.) Plaintiff also indicated at this point in his deposition that "[f]rom now on" his answer will be "I don't know" to "everything." (*Id.*)

To the extent the issue of legibility remains disputed, the Court agrees with Defendant's characterization of the third category of documents as illegible and concludes that a rational juror could not find otherwise. For example, here is one of the documents that Plaintiff seeks to characterize as legible, albeit "difficult to read," proof that he made a $1,900 payment to Defendant:



(Doc. 52 at 46.) Although it may be possible to decipher some words within this document, certain pieces of important information (such as the date) are indecipherable.

Likewise, here is the other document that Plaintiff seeks to characterize as "difficult to read" but legible proof of a $1,990 payment to Defendant:

(Doc. 52 at 50.) It suffers from the same infirmities as the other document.

As for what happened after Plaintiff's counsel sent the letters to Experian and Equifax, on January 28, 2022, Experian issued a notice to Plaintiff entitled "Your credit report and dispute results." (Doc. 37-8 at 2.) As relevant here, the notice indicated that "we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to review all information we provide them about your dispute, verify the accuracy of the information, provide us a response to your dispute, and update their records and systems as necessary." (*Id.*) As for the results of Defendant's investigation, the report stated: "The information you disputed has been verified as accurate." (*Id.*)

Unfortunately, the record is silent as to the steps that Defendant took to investigate Plaintiff's dispute after being forwarded the materials that Plaintiff sent to Experian and Equifax. In his summary judgment motion, Plaintiff asserts that Defendant "failed to reasonably investigate Plaintiff's dispute" (Doc. 37 at 4) but does not produce any evidence related to Defendant's investigatory efforts. Meanwhile, in its response and cross-motion, Defendant notes that "Plaintiff had the opportunity to depose [Defendant's] corporate representative but did not inquire as to [Defendant's] investigation of the dispute." (Doc. 50 at 10.) Defendant also provides the entire transcript of its Rule 30(b)(6) representative's deposition, and the Court agrees that there is no questioning about the steps that Defendant took to investigate Plaintiff's dispute after receiving the materials from Experian and Equifax. (Doc. 52 at 104-19.) Instead, Defendant's corporate representative was simply asked whether the black-and-white, pixelated copies of bank documents (which, as noted, were among the materials that were forwarded to Defendant) "provided evidence that [Plaintiff] made two payments of $1,990 each to [Defendant]," and the corporate representative responded that the pages "were illegible so I can't say with certainty that that is absolutely a true statement." (*Id.* at 118.) Finally, in his response to Defendant's cross-motion, Plaintiff makes several additional factual assertions about Defendant's investigatory efforts, including that "Defendant did not investigate payments by Plaintiff to [Defendant] but instead investigated 'any payments to Fresh View Solutions' (who was

collecting on behalf of Defendant)" and that "Defendant did not reach out to Plaintiff for additional information or documents [sic] its claims were illegible" (Doc. 55 at 6-7), but again fails to supply any evidence to substantiate those assertions.[2]

Finally, Plaintiff testified during his deposition that he did, in fact, settle the debt in 2016 by sending two $1,990 checks to Fresh View Solutions. (Doc 52 at 59 ["I have the certified checks from Bank of America that I've mailed out to them at the proper time frames that they requested from me. They were cashed out at the proper time frames. Everything was done as they asked me to do."].) In support of his summary judgment motion, Plaintiff also submitted a declaration in which he avowed to this fact. (Doc. 37-1 ¶ 3 ["[Defendant's] reporting is false because on or about June 2016, the account reflected by the false tradeline was settled and paid to Fresh View Solutions, a collector collecting on behalf of Defendant."].)

II. Procedural History

On March 29, 2022, Plaintiff initiated this action by filing the complaint. (Doc. 1.)[3]

On February 28, 2023, Plaintiff moved for summary judgment. (Doc. 37.)

On June 2, 2023, Defendant filed a combined response and cross-motion for summary judgment. (Doc. 50.)[4] Defendant separately filed a statement of facts (Doc. 52) and a declaration from its counsel (Doc. 51).[5]

---

[2] Although Plaintiff did not supply his own deposition testimony as an exhibit to any of his filings, Defendant provided the transcript from Plaintiff's deposition as an exhibit to its cross-motion. (Doc. 52 at 54-74.) The Court has reviewed the transcript, and it does not contain any discussion of whether Defendant attempted to follow-up with Plaintiff about the illegibility of the documents he provided to Experian and Equifax. Indeed, when asked "Assuming Equifax did send this letter to CACH, do you have any evidence that says CACH did not investigate the dispute?", Plaintiff responded: "I can't recall. I can't remember." (*Id.* at 71.)

[3] Plaintiff also sued Experian and Equifax, but Experian later settled (Docs. 13, 28) and the claims against Equifax were later dismissed (Doc. 29).

[4] Defendant's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the decisional process. *See* LRCiv 7.2(f).

[5] Defendant urges the Court to deny Plaintiff's motion on procedural grounds because Plaintiff did not file a separate statement of facts as required by Local Rule 56.1. (Doc. 50 at 1 n.1.) But in the case management order, the Court explained that Rule 56.1 "is suspended, except for subsection (d)." (Doc. 25 at 5. *See also id.* ["In other words, the parties may not file separate statements of facts or separate controverting statements of facts, and instead must include all facts in the motion, response, or reply itself."].)

On June 19, 2023, Plaintiff filed a reply in support of his motion. (Doc. 53.)

On July 3, 2023, Plaintiff filed a response to Defendant's cross-motion (Doc. 55) and a response to Defendant's statement of facts (Doc. 56).

On July 18, 2023, Defendant filed a reply in support of its cross-motion. (Doc. 58.)

## DISCUSSION

I. Legal Standard

"The court shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference[s] in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors*, 771 F.3d at 1125.

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . . [the] moving party carries its burden of production, the nonmoving party must produce

---

Therefore, Plaintiff's motion is not procedurally deficient for this reason. In fact, it is Defendant that violated the case management order by filing a separate statement, but the Court will overlook the violation and consider Defendant's motion on the merits.

evidence to support its claim or defense." *Id.* at 1103.

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.* There is no issue for trial unless enough evidence favors the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. At the same time, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254. Thus, "the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Id.* at 255.

"[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits," but the Court must consider all evidence submitted in support of both cross-motions when separately reviewing the merits of each motion. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotation marks omitted). For "the party with the burden of persuasion at trial"—usually the plaintiff—to succeed in obtaining summary judgment in its favor, it "must establish beyond controversy every essential element" of each claim on which summary judgment is sought. *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). The party without the burden of persuasion at trial—usually the defendant—is entitled to summary judgment where it establishes that the party with the burden of persuasion will be unable to prove at least one element of its claim in light of the undisputed facts. *Celotex Corp.*, 477 U.S. at 322-23. This distinction reflects that the burden is ultimately on the proponent of each claim to prove it. *Id.* ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

II. Analysis

The Court will address the merits of the cross-motions together due to their overlapping nature. When appropriate, the Court will identify any factual disputes and resolve them in favor of the non-movant.

**A. FCRA**

1. The Parties' Arguments

In Counts One and Two of the complaint, Plaintiff alleges that Defendant committed negligent and willful violations of the FCRA. (Doc. 1 ¶¶ 19-30.) The gist of these claims is that Defendant was aware that Plaintiff was disputing the debt and either negligently or willfully failed to conduct a proper investigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681s-2(b). (*Id.* at ¶¶ 20-21, 27-28.)

Plaintiff moves for summary judgment on these claims on the ground that Defendant "failed to conduct a reasonable investigation into Plaintiff's dispute" and "failed to review all relevant information provided to it by Equifax and Experian." (Doc. 37 at 9.)

In response (and in support of its cross-motion), Defendant argues that "Plaintiff has not presented evidence sufficient to establish that [Defendant] failed to conduct a reasonable investigation of his credit dispute." (Doc. 50 at 10.) Defendant argues that Plaintiff "did not inquire as to [Defendant's] investigation of the dispute" during the deposition of Defendant's corporate representative and, more generally, "fails to provide any factual support" for his contention that Defendant's inquiry was unreasonable. (*Id. See also id.* [noting that Plaintiff does not "articulate what documents were provided that should have led [Defendant] to a different conclusion and why"].)

In reply, Plaintiff reiterates his contention that "Defendant did not conduct a reasonable investigation under the FCRA." (Doc. 53 at 7.) Plaintiff argues that "Defendant

does not dispute receiving the Plaintiff's dispute letter and supporting documents" and "[e]ven if the payments were not legible to Defendant, the dispute was clear in its articulation of Plaintiff's dispute—the reported balance was inaccurate." (*Id.*) Plaintiff continues: "Defendant does not argue that it reached out to Fresh View Solutions . . . [and] by its own admission . . . did not investigate payments to Plaintiff by CACH, LLC . . . but instead investigated 'any payments to Fresh View Solutions' (who was collecting on behalf of Defendant.)" (*Id.* at 7-8.) Plaintiff makes nearly identical arguments in his response to Defendant's cross-motion while adding the factual assertion that "Defendant did not reach out to Plaintiff for additional information or documents [sic] its claims were illegible." (Doc. 55 at 6-7.)

In reply, Defendant argues that Plaintiff's FCRA arguments are premised on "two incorrect assumptions": first, that the materials attached to his counsel's December 2021 letter "demonstrate that a settlement was reached regarding Plaintiff's debt"; and second, that Defendant "did not investigate payments by Plaintiff to [Defendant]." (Doc. 58 at 4-5.) Defendant argues that the latter assertion lacks support in the record because Defendant's corporate representative "never stated that [Defendant] failed to investigate Plaintiff's payments to [Defendant]—only that [Defendant's] corporate witness found no evidence of payments to Fresh View Solutions during her deposition." (*Id.* at 5.) Defendant concludes: "[I]t was Plaintiff's duty to ask [Defendant's] corporate witness about the specifics of [Defendant's] investigation. But Plaintiff failed to inquire about [Defendant's] investigation of the dispute during the deposition." (*Id.*)

2. Analysis

"[T]he FCRA imposes some duties on the sources that provide credit information to [credit reporting agencies], called 'furnishers' in the statute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153-54 (9th Cir. 2009). As relevant here, once a furnisher such as Defendant receives a notice of dispute from a consumer, it has the obligation to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). The Ninth Circuit has held that the "investigation" requirement

means the investigation "may not be unreasonable." *Gorman*, 584 F.3d at 1157 ("We thus follow the Fourth and Seventh Circuits and hold that the furnisher's investigation pursuant to § 1681s-2(b)(1)(A) may not be unreasonable."). Thus, "[t]o succeed on [his] FCRA claim, Plaintiff must prove: (1) Defendant is a 'furnisher'; (2) Plaintiff notified the CRA that Plaintiff disputed the reporting as inaccurate; (3) the CRA notified the furnisher of the alleged inaccurate information of the dispute; (4) the reporting was in fact inaccurate; and (5) Defendant failed to conduct the investigation required by § 1681s-2(b)(1)." *Miller v. Westlake Servs. LLC*, 2022 WL 16556836, *6 (C.D. Cal. 2022) (internal quotation marks and citation omitted).

Defendant contends that Plaintiff cannot satisfy the fifth element due to his failure during the discovery process to obtain any evidence regarding Defendant's investigatory efforts. (Doc. 50 at 10.) "When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (internal quotation marks and citations omitted). Accordingly, Defendant has done enough under *Celotex* to place the burden on Plaintiff to come forward with evidence from which a reasonable factfinder could conclude that Defendant failed to conduct a reasonable investigation of his dispute. *See also* 2 Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 56, at 159-60 (2022) ("[Although] [i]t is not perfectly clear how detailed the moving party must be when 'pointing out' the absence of evidence . . . the moving party's burden to address the existing record does not appear to be a heavy one. . . . [A]ll courts agree—and this was the critical point of *Celotex*—that the moving party's burden is only to address the existing proof record and in some measure identify some hole in that proof. The moving party need go no further, and in particular is not obligated to submit new proof showing that there is nothing missing that could fill that hole.").

Plaintiff has not come close to meeting that burden. Notably, Plaintiff did not conduct any discovery into the steps that Defendant took to investigate his dispute after receiving the forwarded materials from Experian and Equifax. For whatever reason,

Plaintiff failed to explore this topic during the Rule 30(b)(6) deposition of Defendant's corporate representative, and there is no other evidence in the summary judgment record that bears on this issue.

Notwithstanding this evidentiary void, Plaintiff peppers his summary judgment papers with various factual assertions regarding the nature of Defendant's investigation. Among other things, Plaintiff asserts that Defendant "failed to reasonably investigate Plaintiff's dispute" (Doc. 37 at 4); that "Defendant did not investigate payments by Plaintiff to [Defendant] but instead investigated 'any payments to Fresh View Solutions' (who was collecting on behalf of Defendant)" (Doc. 53 at 7); and that "Defendant did not reach out to Plaintiff for additional information or documents [sic] its claims were illegible" (Doc. 55 at 6-7). The problem with these assertions is that they are unsupported. Not only does Plaintiff fail to provide any supporting evidentiary citations, in violation of Rule 56(c), but the Court's independent review of the record reveals that there is no evidence supporting Plaintiff's assertions. As noted, the record is silent as to what Defendant did between receiving the materials that Plaintiff sent to Experian and Equifax in December 2021 and informing Experian (as reflected in Experian's January 28, 2022 notice to Plaintiff) that "[t]he information you disputed has been verified as accurate." (Doc. 37-8 at 2.)

Plaintiff's briefs can also be construed as arguing that Defendant's investigation was necessarily unreasonable because Defendant did not resolve the dispute in his favor after reviewing the materials attached to his December 2021 letter to Experian and Equifax. This argument is unavailing. As discussed in the statement of facts, the supposed proof of the payments that Plaintiff attached to his letter was illegible. And more broadly, "[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Gorman*, 584 F.3d at 1161. Although "summary judgment is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the reasonable man standard is thought ordinarily to preclude summary judgment," "summary judgment is not precluded altogether on questions of reasonableness." *Id.* at 1157 (cleaned

up). "The pertinent question is . . . whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Id.* Here, given the utter absence of any evidence concerning the scope and nature of Defendant's investigation (beyond the bare fact that Defendant received a packet of materials from Plaintiff that were, on their face, inconclusive as to the validity of the debt), a reasonable factfinder could not conclude that the investigation was objectively unreasonable. *See also Bondi v. Nationstar Mortg. LLC*, 752 F. App'x 431, 433 (9th Cir. 2018) (affirming summary judgment in Nationstar's favor and reasoning that "Bondi has produced no evidence showing that Nationstar failed [to conduct a reasonable investigation and correct any errors]; instead, he points to Nationstar's refusal to believe his assertion that his loan had been forgiven. Nothing in the FCRA obliged Nationstar to accept this assertion as true and resolve the dispute in his favor").

Accordingly, summary judgment is granted in Defendant's favor as to Counts One and Two, and Plaintiff's motion for summary judgment as to those claims is denied.

B. **FDCPA**

1. <u>The Parties' Arguments</u>

In Count Seven of the complaint, Plaintiff alleges that Defendant violated the FDCPA by "falsely reporting the character, amount, or legal status of any debt." (Doc. 1 ¶¶ 59-67.)

As he argued in relation to his FCRA claims, Plaintiff argues that he "provided proof of payment along with his letter" to "Equifax and Experian" who "forwarded Plaintiff's consumer dispute to [Defendant], which [Defendant] received" and Defendant "failed or refused to correct the inaccurate balance and past due amount." (Doc. 37 at 13-14.) Essentially, Plaintiff argues that his letter and document package constitute conclusive evidence that he settled his debt with Fresh View Solutions and, thus, Defendant violated the FDCPA by continuing to report the debt. (*Id.*)

In response (and in support of its cross-motion), Defendant first argues that Plaintiff's FDCPA claim is barred by the applicable one-year statute of limitations because

Defendant first reported his debt in September 2018 and he did not file suit until 2022. (Doc. 50 at 5.) Next, Defendant argues that Plaintiff cannot prove he settled the debt. (*Id.* at 5-6.) More specifically, Defendant contends that, although Plaintiff testified that he settled the debt, "Plaintiff has not provided sufficient evidence to [Defendant], or this Court, that he fully performed his obligations under the June 14, 2016 settlement offer" because the documents he provided "do not prove any settlement was agreed upon; nor that any payment was actually made." (*Id.* at 6-7.) Finally, and in a related vein, Defendant argues that "there is no proof that Plaintiff performed his obligations to settle the debt" because (1) the USPS tracking number associated with one of the payments that Plaintiff purportedly mailed to Fresh View Solutions shows the status "label has been created but is not yet in the system"; and (2) even if the payment had been delivered, Plaintiff only offered evidence that he made one of the two $1,990 installment payments, which would not fulfill the terms of the settlement offer. (*Id.* at 7-8.)

In reply, as for the statute of limitations, Plaintiff does not dispute that Defendant first reported his debt in September 2018 but argues that each successive false report amounted to a new FDCPA violation that triggered a new one-year limitations period. (Doc. 53 at 3-4.) Plaintiff thus argues that, because he has produced evidence (in the form of his November 2021 credit reports from Experian and Equifax) that Defendant also "reported the debt in November 2021," his filing of this lawsuit in March 2022 was timely. (*Id.*) On the merits, Plaintiff argues that "although the payment documents are difficult to read, they do show two payments of $1,900 made payable to Defendant CACH, LLC and not Fresh View Solutions who was collecting on behalf of CACH, LLC" and notes that attached to Defendant's cross-motion "[t]here is a clear copy of a cashier's check dated June 22,2016 payable to CACH, LLC in the amount of $1,990 . . . showing at least one of the two payments." (*Id.* at 4-5.) Plaintiff's response to Defendant's cross-motion makes nearly identical arguments. (Doc. 55 at 3-6.)

In reply, Defendant reiterates its earlier merits-based arguments and adds, with respect to the statute of limitations, that the Ninth Circuit "has not adopted" the rule that

each successive reporting of an inaccurate debt amounts to a new FDCPA violation that creates a new one-year limitations period. (Doc. 58 at 2-4.)

2. Analysis

Under 15 U.S.C. § 1692k(d), "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs." The Supreme Court has interpreted this provision to mean that "[t]he FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened," not when the plaintiff discovers the violation. *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019). Here, it is undisputed that Defendant first reported Plaintiff's debt in September 2018. (Doc. 50 at 2; Doc. 52 at 2 ¶ 4; Doc. 56 ¶ 4.) Indeed, Plaintiff acknowledged during his deposition that Defendant's initial reporting occurred no later than 2018 and caused him to suffer negative consequences in 2018 when obtaining an auto loan. (Doc. 52 at 64, 66, 73.) Accordingly, the statute-of-limitations analysis turns on whether Plaintiff's FDCPA claim is limited to Defendant's initial report of his debt in 2018 (in which case Plaintiff's claim is time-barred) or whether Defendant's subsequent acts of reporting, including its reports to Experian and Equifax in November 2021, constituted independent violations (in which case Plaintiff's claim is not time-barred).

In a recent decision issued while the briefing process in this case was unfolding, the Ninth Circuit addressed this issue and resolved it in Plaintiff's favor. In *Brown v. Transworld Systems, Inc.*, 73 F.4th 1030 (9th Cir. 2023), the court explained that "[a]lthough we perhaps have not yet said so explicitly, every alleged FDCPA violation triggers its own one-year statute of limitations as provided in § 1692k(d)." *Id.* at 1040. The court also cited, with approval, decisions from the Sixth and Tenth Circuits adopting the same rule. *Id.* Accordingly, because Defendant's statute-of-limitations argument is premised on Defendant's prediction that the Ninth Circuit would not adopt the rule applied in those circuits (Doc. 58 at 2)—a prediction that has now proved inaccurate—summary judgment is not warranted on this basis.

Turning to the merits, both sides seem to agree (Doc. 37 at 11-12; Doc. 50 at 5-9)

that "FDCPA claims have four elements: (1) the plaintiff is a 'consumer' under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a 'debt collector' under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a–1692o." *Mitchell v. Auto Mart*, LLC, 2022 WL 2818346, *2 (D. Nev. 2022) (citation and internal quotation marks omitted). *Accord Sparlin v. Select Portfolio Servicing, Inc.*, 2012 WL 527486, *9-10 (D. Ariz. 2012). In his motion, Plaintiff contends that "[t]he first three elements . . . are undisputed by [Defendant] or are indisputable" (Doc. 37 at 12) and Defendant does not seem to disagree with this assertion in its motion papers. Accordingly, the parties' dispute centers on the fourth element, which is whether Defendant "violated one of the provisions contained in 15 U.S.C. §§ 1692a–1692o." *Mitchell*, 2022 WL 2818346 at *2.

As to that issue, Plaintiff's theory is that Defendant violated 15 U.S.C. § 1692e(2)(A), which prohibits a debt collector from making a "false representation of . . . the character, amount, or legal status of any debt" in connection with the collection of a debt. Notably, "a false representation under § 1692e(2)(A) does not need to be knowing or intentional to establish a prima facie case—the fact that a defendant made a representation and the representation was false is sufficient." *Sime v. IQ Data Int'l, Inc.*, 2015 WL 3833452, *4 (N.D. Cal. 2015). *See also Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006) ("Requiring a violation of § 1692e to be knowing or intentional needlessly renders superfluous § 1692k(c).").[6] Thus, the question for summary judgment purposes is whether either side has established the absence of a genuine dispute of fact as to whether Plaintiff, in fact, settled his debt.

The answer to that question is no. On the one hand, a reasonable juror could conclude from the evidence in the record that Plaintiff did not satisfy the terms outlined in the settlement offer—namely, that Plaintiff did not make two $1,990 payments in the

---

6 Although the FDCPA also creates a "bona fide error defense" under which "a debt collector is not liable for its violations of the FDCPA if 'the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error,'" *Clark*, 460 F.3d at 1176-77 (citation omitted), Defendant does not seek (or seek to avoid) summary judgment based on that defense.

timeframe specified by Fresh View Solutions. Defendant produced a legible copy of a check for only one of the two payments, which does not indicate whether the check was ever negotiated, and Plaintiff's additional documentation related to the second purported payment is illegible (or, at a minimum, could be viewed as illegible by a reasonable juror). Therefore, a reasonable juror could find that Plaintiff did not comply with the terms of the settlement offer, in which case Defendant's continued reporting of Plaintiff's debt was not false.

On the other hand, a reasonable juror could find from Plaintiff's evidence that he satisfied the terms of the settlement offer. Plaintiff testified, and then avowed in a declaration, that he settled the debt in conformance with the settlement terms set out in the offer letter by timely sending two $1,990 checks to Fresh View Solutions that were accepted and deposited. (Doc. 37-1 ¶ 3; Doc. 52 at 59.) Although Defendant derides this testimony as self-serving and uncorroborated by legible documentary evidence, these are not permissible grounds for disregarding Plaintiff's factual assertions on this topic—which touch on matters as to which Plaintiff would have personal knowledge—at summary judgment. *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001) ("[S]elf-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory."); *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 160 (4th Cir. 2018) ("That Ezeh's allegations lack extensive corroborating evidence is of little import, because the volume of corroborating evidence relates only to the credibility and weight of the evidence, which are issues for *the jury*.") (cleaned up); *United States v. Stein*, 881 F.3d 853, 856 (11th Cir. 2018) (en banc) ("We overrule *Mays* to the extent it holds or suggests that self-serving and uncorroborated statements in a taxpayer's affidavit cannot create an issue of material fact with respect to the correctness of the government's assessments. Nothing in Rule 56 prohibits an otherwise admissible affidavit from being self-serving. And if there is any corroboration requirement for an affidavit, it must come from a source other than Rule 56.").

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's motion for summary judgment (Doc. 37) is **denied**.

2. Defendant's motion for summary judgment (Doc. 50) is **granted in part and denied in part**.

Dated this 16th day of August, 2023.

Dominic W. Lanza
United States District Judge